
ORDERED.

Dated: April 13, 2016

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| ENTERPRISE TECHNOLOGY ) | Case No. 6:10-bk-06545-KSJ |
| PARTNERS, LLC, ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |

## MEMORANDUM OPINION PARTIALLY APPROVING PROFESSIONAL APPLICATIONS

The Chapter 7 Trustee, Carla Musselman, settled a fraudulent transfer adversary proceeding for $450,000, but cannot pay her professionals in full much less make a distribution to the Debtor's substantial creditors. Given the magnitude of administrative insolvency, the Court set hearings[1] on final fee applications filed by the Trustee, one in her capacity as a trustee[2] and separately as an accountant[3] to the estate, and another application filed by her lawyers,[4] Winderweedle, Haines, Ward & Woodman, P.A. ("Winderweedle"). The Court will reduce the professional fees sought as explained in this Memorandum Opinion.

---

[1] The hearings were held on November 16, 2015. Adams and Reese, LLP, then filed its detailed billing statements (Doc. No. 76), and Winderweedle supplemented its application (Doc. No. 77).
[2] Doc. No. 67.
[3] Doc. No. 66.
[4] Doc. No. 64.

The only monies collected by the Trustee arose from the settlement of a fraudulent transfer adversary proceeding against insiders of the Debtor—Julia L. Johnson, the Julia L. Johnson Revocable Living Trust, and six related limited liability corporations.[5] The simple garden variety fraudulent transfer complaint,[6] nine pages long, alleges the six related limited liability corporations, which each owned real estate, either intentionally or constructively fraudulently transferred their assets to the two primary non-debtor defendants.

The Trustee inexplicably hired two separate law firms to represent her in this adversary proceeding—Winderweedle and Adams and Reese.[7] The Court is perplexed by the Trustee's dual retention given Adams and Reese agreed to prosecute her claims for a very favorable contingency fee rate of 20%. Why hire a second law firm, Winderweedle, billing at an hourly rate? In addition, the Trustee personally seeks substantial accounting fees, primarily for performing a solvency analysis in the Adversary Proceeding. Defendants vigorously defended the Adversary Proceeding but, on the literal eve of trial, the parties settled.[8]

The settlement was simple. Defendants would pay $450,000 to the Trustee who would dismiss the Adversary Proceeding.[9] In her motion, the Trustee argued the settlement avoided the

---

[5] Adv. Proceeding No. 6:12-ap-00013-KSJ.
[6] Adv. Proceeding No. 6:12-ap-00013-KSJ, Doc. No. 1, filed on January 6, 2012.
[7] Adams and Reese, LLP previously operated as the law firm of Volpe, Bajalia, Wickes, Rogerson & Wachs, P.A. Prior to the filing of this Chapter 7 case, the firm had represented a large creditor in their attempts to collect a debt against the Debtor. The creditor, Astadia Inc., held a claim of $627,928.18, which represents 29% of the unsecured claims filed in this case. Doc. No. 77, P. 2. Given the law firm's significant knowledge of the alleged fraudulent transfers obtained during pre-petition state court litigation, the Trustee hired Adams and Reese to represent her in the Adversary Proceeding for a contingency fee of 20% of the gross amounts recovered plus their costs and expenses. Doc. Nos. 20 and 77.
[8] Doc. No. 34, filed on February 3, 2014, in the main case. The trial also was scheduled to start on February 3, 2014. Doc. No. 64.
[9] Doc. No. 34, P. 2.

need for a three or more day trial involving ten witnesses and "complex financial documents."[10] Trustee, however, did not disclose that the settlement amount was insufficient to even cover her administrative costs. No party objected to the settlement that, on its face, appeared significant. The estate was to get $450,000, theoretically for distribution to creditors comprising priority claims of $12,758.89 and unsecured claims of $2,097,966.78.[11] The reality, however, is very different.

Trustee lacks monies to pay her retained professionals, *if* the Court allows the pending applications in full from the settlement amount. Trustee separately negotiated another settlement with an alleged secured creditor of the Debtor, Florida Community Bank, N.A., for $40,000.[12] After deducting the $40,000 payment from the larger $450,000 settlement, the Trustee has only $410,000 to distribute to herself and her professionals.

Trustee and her professionals request these fees:

| Party | Amount Billed |
|---|---|
| Chapter 7 Trustee Statutory Fees | $ 25,750.00 |
| Chapter 7 Trustee Expenses | $ 2,962.75 |
| Miscellaneous Expenses[13] | $ 2,052.47 |
| Adams & Reese Fees[14] | $ 90,000.00 |
| Adams & Reese Expenses | $ 26,847.55 |
| Winderweedle Fees | $ 173,223.00 |
| Winderweedle Expenses | $ 27,044.57 |
| Accountant Fees | $ 105,123.00 |
| **Total** | **$ 451,622.82** |

---

[10] Doc. No. 34, ¶ 13.
[11] Doc. No. 70.
[12] Doc. Nos. 59 and 61.
[13] This number represents a small interim administrative expense paid to Shred-It USA, LLC, bankruptcy court charges, and previously paid bank service fees.
[14] The Court notes that the $90,000 contingency fee is approximately $143,529.50 less than the actual fees Adams and Reese billed.

So, the Trustee has incurred administrative costs of almost $452,000, or, if you include the real amount incurred by Adams and Reese, almost $600,000 in administrative expenses.[15]

The primary job of a Chapter 7 Trustee is to pay creditors by locating and liquidating assets. But a tension exists. Trustees also insure the integrity of the bankruptcy process and pursue collection of assets to prevent unscrupulous debtors from hiding assets rightfully part of their bankruptcy estate. Sometimes the cost to liquidate an asset is high, particularly when the debtors or their cohorts make collection difficult. The substantial fees requested illustrate this tension but also demonstrate the consequences when a trustee loses sight of her primary job—to pay the creditors.

Section 330(a)(1) of the Bankruptcy Code allows the Court to award "reasonable compensation for actual, necessary services" rendered by attorneys and paraprofessionals employed by a trustee.[16] Bankruptcy courts determine reasonableness of compensation under § 330 upon considering the "nature, the extent, and the value of such services, taking into account all relevant factors, including" those listed in § 330(a)(3).[17] The factors include the time spent on the services, the rates charged for those services, whether the services were necessary or beneficial to a bankruptcy case, the reasonableness of the time to perform the services, whether the professional has experience in the bankruptcy field, and whether the compensation requested is customary or comparable to other cases.[18] These factors weigh into the court's lodestar analysis, which calculates the reasonable fee by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.[19] A bankruptcy court then can make adjustments to the lodestar calculation, upward or downward, after considering the 12 factors laid out in

---

[15] If Adams and Reese did not agree to a contingency fee, the total would have been $595,152.32.
[16] 11 U.S.C. § 330(a)(1)(A) (2012).
[17] 11 U.S.C. § 330(a)(3)(A)-(F).
[18] *Id.*
[19] *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990).

*Johnson v. Georgia Highway Express, Inc.*[20] and explaining how they affect the award.[21] Professionals must "exclude any excessive, unnecessary, or redundant hours from their fee applications."[22] The Court considered and applied each factor discussed to each fee application.

The Court first will approve as reasonable and appropriate the *expenses* sought by all parties, totaling $58,907.34, and Adams and Reese's requested contingency fee $90,000 (20% of the $450,000 settlement). Based on the detailed billing statements supplied by Adams and Reese,[23] Adams and Reese brought substantial factual knowledge and experience from their pre-petition litigation with the Debtor and expended 875 hours, billing $233,529.50 for their legal work in the Adversary Proceeding. The firm certainly deserves the reduced contingency fee amount of $90,000 for their services, which were beneficial and necessary to the estate.

## **Winderweedle Fees**

**General Administration Fees**. Winderweedle seeks fees of $48,201.50 for general services provided to the Trustee. The Court finds these fees reasonable and appropriate, considering all of the factors outlined in § 330 of the Bankruptcy Code and in the *Johnson* decision.

**Litigation Fees**. Winderweedle seeks fees of $125,021.50 for legal work performed on the fraudulent transfer Adversary Proceeding. (This is in addition to the $90,000 sought by Adams and Reese.) The Court cannot justify allowance of these fees given the Trustee's retention of Adams and Reese to represent the estate's interest for a favorable contingency fee of

---

[20] 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717-19. Some of the *Johnson* factors overlap with the factors promulgated by § 330(a)(3).
[21] *Grant*, 908 F.2d at 878-79.
[22] *In re Blue Stone Real Estate*, 487 B.R. 573, 577 (Bankr. M.D. Fla. 2013) (citing *Franklin v. Hartford Life Ins. Co*., No. 8:07-cv-1400-T-23MAP, 2010 WL 916682, at *3 (M.D. Fla. March 10, 2010) and *ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir. 1999)).
[23] Doc. No. 76.

20%. The additional services of Winderweedle, although an excellent firm and fully able to independently prosecute the Trustee's claims, were largely duplicative, unreasonable, unnecessary, and not in the best interest of the estate. Either firm could have ably handled the litigation, but the retention of two firms to do largely the same work is not reasonable.

After a detailed review of the billing records of Adams and Reese and Winderweedle, the Court concludes that the vast majority of the work was repetitive. Partners from each firm attended multiple depositions and hearings together. Why? Attorneys at both firms reviewed the same documents and edited the same pleadings. Why?

Examples of more glaring duplication of services include:[24]

a. Both firms prepared for, attended, and billed for the following depositions for approximately 184 hours of largely duplicative work:

   i. Multiple depositions of Julia Johnson;[25]
   ii. Robert Saltsman deposition;[26]
   iii. Robert Dwyer deposition;[27]
   iv. Trustee deposition;[28]
   v. Walter Carpenter deposition;[29]
   vi. Josh High deposition;[30] and
   vii. Bob Morrison deposition.[31]

b. Both firms drafted and edited the complaint. From the time sheets, the firms recorded around 40 hours for drafting, revising, and strategizing about the nine page complaint.[32]

---

[24] This list is not meant to be exhaustive and is just a documentation of some of the more glaring overlaps.

[25] The depositions took place in August 2011 (Doc. No. 49-1, P. 3. Doc. No. 76, P. 8), January 2013 (Doc. No. 49-1, P. 10. Doc. No. 76, P. 83), April 2013 (Doc. No. 49-1, PP. 12-13. Doc. No. 76, PP. 91-92).

[26] This deposition took place in January 2013. Doc. No. 49-1, P. 9. Doc. No. 76, P. 81.

[27] This deposition took place in March 2013. Doc. No. 49-1, P. 11. Doc. No. 76, P. 87.

[28] This deposition took place in May 2013. Doc. No. 49-1, P. 14. Doc. No. 76, P. 98.

[29] This deposition took place in June 2013. Doc. No. 49-1, P. 15. Doc. No. 76, P. 103.

[30] This deposition took place in August 2013. Doc. No. 49-1. P. 17. Doc. No. 76, PP. 110-11.

[31] This deposition took place in August 2013. Doc. No. 49-1. P. 17. Doc. No. 76, PP. 110-11.

[32] Doc. No. 49-1, PP. 3-5, Doc. No. 76, PP. 12-29.

      c. Both firms attended hearings and mediations together and billed for preparation in anticipation of those meetings for 128 hours:

           i. Status conference on July 26, 2012 (approximately 3 hours between the two firms);[33]
           ii. Mediation on October 30, 2012 (approximately 16 hours were billed for the mediation and approximately 32 hours in preparation);[34]
           iii. Mediation on September 18, 2013 (approximately 30 hours were billed for the mediation and approximately 44 hours in preparation);[35]
           iv. Pretrial conference on October 10, 2013 (approximately 3 hours between the two firms).[36]

      d. Both firms also duplicated the other's efforts in reviewing discovery, preparing discovery requests, and resolving discovery disputes. At a minimum, the lawyers spent at least 285 hours on discovery issues,[37] split between the two firms. The Court can only guess at the time it took just to communicate between the firms on these discovery issues.

Courts are uniform in denying compensation for unnecessary and duplicative work. "Not all work performed by an attorney whose employment has been approved is compensable simply by virtue of the fact that the attorney has actually performed the work. The Court will disallow fees resulting from excessive time spent to complete a task."[38] "[C]ompensation will not be awarded for 'unnecessary duplication of services.' The risk of duplication of services is particularly great here"[39] because the Trustee employed two firms to do the same job one on a contingency fee basis and one hired by the hour. So, "she must give particular care to clearly

---

[33] Doc. No. 49-1, P. 6. Doc. No. 76, P. 52.
[34] Doc. No. 49-1, PP. 7-8, Doc. No. 76, PP. 65-68.
[35] Doc. No. 49-1, PP. 17-19, Doc. No. 76, PP. 111-116.
[36] Doc. No. 49-1, P. 20. Doc. No. 76, P. 120.
[37] *See generally* Doc. No. 49-1; Doc. No. 76, (discovery issues span several pages).
[38] *In re First State Bancorporation*, No. 7-11-11916 JA, 2014 WL 1203141, at *4 (Bankr. D.N.M. Mar. 24, 2014).
[39] *Id.* (internal citations omitted). *See also In re Brous*, 370 B.R. 563, 573 (Bankr. S.D.N.Y. 2007) ("The estate did not require two sets of lawyers overseeing [a] transaction. … The fees pertaining to these duplicative (and sometimes vaguely described) services will be disallowed, subject to two exceptions.").

define the legal services [that the two firms] … will perform in order to minimize the inefficient duplication of efforts."[40]  Trustee failed at this job.

The Trustee and her professionals incurred more fees than the settlement.  "Counsel's belief that [the litigation] would result in a substantial recovery for the estate did not give Counsel free reign to devote many hours to a project that should have been accomplished in much less time. Attorneys have a duty to exercise good billing judgment when they apply for fees."[41]

Ultimately, the Trustee is "responsible for the administration of the estate, including most significantly the safeguarding and responsible disposition of estate assets and *their distribution to creditors*."[42]  The Court finds that Winderweedle's litigation fees are not allowable because the firm merely duplicated services Adams and Reese agreed to provide.  "Because [the Trustee] hired [both firms], she is ultimately responsible to ensure that tasks are assigned and completed efficiently."[43]  And "where multiple law firms all work on some of the same matters, the requested fees will be carefully scrutinized to ensure that compensation is not allowed for an 'unnecessary duplication of services.'"[44]  This scenario survives no cost-benefit analysis.  Winderweedle's litigation fees of $125,021.50 are not allowed.

## Chapter 7 Trustee Fees

**Trustee's Statutory Fee.**  The Trustee seeks $25,750 for her statutory fee.  Trustee's decision to hire two law firms to litigate the same Adversary Proceeding resulted in an astonishing amount of duplicate legal fees and costs.  The Court concludes that the Trustee did

---

[40] *In re First State Bancorporation*, No. 7-11-11916, 2014 WL 1203141 at *7.
[41] *In re Mohsen*, 473 B.R. 779, 792 (Bankr. N.D. Cal. 2012) *aff'd*, 506 B.R. 96 (N.D. Cal. 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)).
[42] *In re Abraham*, 163 B.R. 772, 779 (Bankr. W.D. Tex. 1994) (emphasis supplied).
[43] *In re First State Bancorporation*, No. 7-11-11916, 2014 WL 1203141 at *7.
[44] *Id.* (internal citations omitted). "To continue working on matters that [one law firm] was retained to handle caused an unreasonable duplication of services contrary to the requirements of 11 U.S.C. § 330." *Id.* at 8.

not properly administer this case.[45]  She incurred substantial unjustified legal fees with no reasonable explanation to the prejudice of the creditors and to her own lawyers.  She is not entitled to the full statutory fee.  The Court will reduce the Trustee's statutory fee by 50%, resulting in a reasonable and appropriate allowed fee of $12,875.

**Trustee's Accountant Fee.** The Trustee seeks total fees of $105,123 for her work as an accountant.  A portion of this amount, $8,803.75,[46] is attributable to the preparation of tax returns and is reasonable and appropriate.   The balance, $96,319.25, is attributable primarily to reviewing the Debtor's financial records and preparing an expert report on the Debtor's solvency for use in the fraudulent transfer adversary proceeding.  The Court will allow 20% of this requested amount, the same percentage given to Adams and Reese on the basis of the contingency fee agreement, or $19,263.85.   It is unreasonable and not beneficial to the bankruptcy estate for the CPA to expend approximately 410 hours on these tasks.[47]  "[W]hen the trustee hires herself as her own attorney or accountant, … there is an inherent conflict of interest and real potential for abuse when a trustee performs her services in the guise of attorney or accountant, billing the estate for those services at her hourly professional rate and, in the process,

---

[45] *In re Bloom*, No. BK 11-12411-JMD, 2012 WL 2344244, at *4 (Bankr. D.N.H. June 20, 2012) ("The Debtor's bankruptcy trustee, as a fiduciary for the Debtor's creditors, has the duty to administer the assets of the bankruptcy estate, under the supervision of this Court, to provide a return to those creditors."); *In re Haugen*, No. 04-00034, 2008 WL 1995359, at *1 (Bankr. D. Haw. May 6, 2008) ("[T]he trustee failed to fulfill his fundamental duty to close the case expeditiously and to handle the estate's money with due care" so the Trustee's fees were reduced.); *In re Laines*, No. 04-10020-RGM, 2007 WL 2287905, at *15 (Bankr. E.D. Va. Aug. 6, 2007) ("A trustee is obligated to properly administer the bankruptcy estate. He must perform appropriate due diligence."); *In re Melber*, 315 B.R. 181, 191 (Bankr. D. Mass. 2004) ("As a fiduciary, a trustee is obligated to administer assets for the benefit of creditors of the Debtors' estate.").

[46] Doc. No. 66, P. 4.

[47] The Court notes that the 410 number represents *only* the CPA's hours. Associates billed even more hours for these tasks—an additional 235.75 hours.

evading the statutory cap on trustee compensation."[48]  Trustee in her capacity as an accountant may receive $28,067.60 for her services.

The Court in conclusion and will allow $238,051.44 for the pending expenses and fee applications:

| Party | Amount Allowed |
|---|---|
| Chapter 7 Trustee Statutory Fees | $ 12,875.00 |
| Chapter 7 Trustee Expenses | $   2,962.75 |
| Miscellaneous Expenses | $   2,052.47 |
| Adams & Reese Fees | $ 90,000.00 |
| Adams & Reese Expenses | $ 26,847.55 |
| Winderweedle Fees | $ 48,201.50 |
| Winderweedle Expenses | $ 27,044.57 |
| Accountant Fees | $ 28,067.60 |
| **Total** | **$238,051.44** |

A separate order consistent with this Memorandum Opinion shall be entered.

### 

Trustee, Carla P. Musselman, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[48] *In re Abraham*, 163 B.R. at 779.